**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff | CIVIL ACTION NO: 03 CV 4087 (DLC) |
| v. | |
| PAUL A. ALLAIRE, G. RICHARD THOMAN, BARRY D. ROMERIL, PHILIP D. FISHBACH, DANIEL S. MARCHIBRODA, AND GREGORY B. TAYLOR, | |
| Defendants. | May 6, 2019 |


**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RELIEF FROM
JUDGMENT PURSUANT TO Fed. R. Civ. P. 60(b)(4)**

Margaret A. Little (*pro hac vice*), CT Bar No. 303494
Caleb Kruckenberg, *admitted in New York*
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC 20036
Telephone: 202-869-5212
Email: peggy.little@ncla.legal
Email: caleb.kruckenberg@ncla.legal

*Attorneys for Movant Barry D. Romeril*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................. 1

FACTS AND PROCEDURAL HISTORY .......................................................... 1

ARGUMENT ........................................................................................................ 2

I.   STANDARD OF REVIEW ........................................................................... 2

II.  THE GAG ORDER GOES FAR BEYOND THE RULE WHICH DOES NOT PROVIDE ANY AUTHORITY TO SILENCE DEFENDANTS ................................................. 3

III. THE GAG ORDER VIOLATES THE FIRST AMENDMENT ................................ 5

    A.   The Gag Order Is a Forbidden Prior Restraint ............................... 5

        1.   Prior Restraints Are Forbidden ................................................ 5

        2.   The Gag Order Is a Prior Restraint .......................................... 5

        3.   The Gag Order Gives SEC Unbridled Enforcement Discretion .............................. 7

        4.   The Gag Order Silences Plaintiff in Perpetuity ....................... 7

    B.   The Gag Order Is a Content-Based Restriction on Speech ........................ 8

        1.   The Gag Order Mandates the Content of Speech ..................... 8

        2.   The Speech Ban Serves No Compelling Government Interest ................................ 9

        3.   The Gag Order Does Not Operate by the Least Restrictive Means ....................... 12

    C.   The Gag Order Forbids Truthful Speech ..................................... 13

    D.   The Gag Order Is an Unconstitutional Condition ........................ 14

IV. THE GAG ORDER VIOLATES DUE PROCESS BECAUSE IT IS UNCONSTITUTIONALLY VAGUE 15

V.   THE GAG ORDER VIOLATES MOVANT'S FIRST AMENDMENT RIGHT TO PETITION ............. 16

VI.  THE GAG ORDER IMPLICATES THE JUDICIARY IN VIOLATING THE CONSTITUTION .......... 19

CONCLUSION ..................................................................................................... 20

## PRELIMINARY STATEMENT

Movant Barry D. Romeril moves pursuant to Fed. R. Civ. P. 60(b)(4) for relief from the final judgment's prohibition of his future truthful speech about this case. Paragraph 11 of the Consent of Barry D. Romeril ("Consent") incorporated into the final judgment is void because it is an unconstitutional prior restraint and a content-based restriction on speech that violates the First Amendment of the U.S. Constitution, and for other reasons more fully set forth below. An Amended Consent Order omitting the offending gag provision has been submitted as part of this Motion.

## FACTS AND PROCEDURAL HISTORY

On June 5, 2003, Plaintiff, the United States Securities and Exchange Commission (SEC), filed a Complaint against all defendants, including Defendant Barry D. Romeril. (Doc. 1.) Shortly thereafter, the SEC and Mr. Romeril reached a negotiated settlement agreement and submitted a proposed final judgment to this Court, along with a signed consent agreement that Mr. Romeril had entered with the SEC. This Court did not hold a hearing concerning the execution of the consent agreement.

On June 13, 2003, this Court entered a final judgment against Mr. Romeril, ordering him to pay $5,214,970. (Doc. 4.). The final order also incorporated the terms of the consent agreement with the SEC. As relevant here, paragraph 11 of the consent agreement required Mr. Romeril to agree to a Gag Order, which provides:

> Defendant understands and agrees to comply with the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings." 17 C.F.R. § 202.5. In compliance with this policy, Defendant agrees not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis. If Defendant breaches this agreement, the Commission may petition the

Court to vacate the Final Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation in which the Commission is not a party.

Mr. Romeril satisfied the monetary judgment against him on July 16, 2003. Nevertheless, and despite the passage of nearly 16 years, Mr. Romeril continues to be bound by the Gag Order provision.

Mr. Romeril desires to engage in truthful public statements concerning the SEC's case against him. However, because those truthful statements might indirectly "creat[e] an impression" that the complaint lacked a factual basis or was otherwise without merit, Mr. Romeril has refrained from exercising his right to speak about this matter.

## ARGUMENT

### I.  STANDARD OF REVIEW

Rule 60(b)(4) of the Federal Rules of Civil Procedure provides that a "court may relieve a party or its legal representative from a final judgment, order, or proceeding" if "the judgment is void." A Rule 60(b)(4) motion must be made "within a reasonable time" after entry of the judgment. Fed.R.Civ.P. 60(b). "Courts have been exceedingly lenient in defining the term 'reasonable time,' when considering voidness challenges. In fact, it has been oft-stated that, for all intents and purposes, a motion to vacate a default judgment as void 'may be made at any time.'" *Grace v. Bank Leumi Tr. Co. of N.Y.*, 443 F.3d 180, 190 (2d Cir. 2006) (quoting *State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 179 (2d Cir. 2004)).

A judgment is void under Rule 60(b)(4) of the Federal Rules of Civil Procedure "only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." *Grace*, 443 F.3d at 193 (quoting *Texlon Corp. v. Mfrs. Hanover Commercial Corp.*, 596 F.2d 1092, 1099 (2d Cir.1979)). When a court has

entered an order that constitutes an impermissible "prior restraint" on speech in violation of the

First Amendment to the Constitution, it is "void, and under Rule 60(b)(4) of the Federal Rules of

Civil Procedure, the parties must be granted relief therefrom." *Crosby v. Bradstreet Co.*, 312

F.2d 483, 485 (2d Cir. 1963).

## II.   THE GAG ORDER GOES FAR BEYOND THE RULE WHICH DOES NOT PROVIDE ANY AUTHORITY TO SILENCE DEFENDANTS

The SEC's referenced policy is set out in 17 C.F.R. § 202.5(e), a regulation that the agency

promulgated in 1972, without notice and comment.  37 Fed. Reg. 25,224 (Nov. 29, 1972). This

provision, the "Gag Rule," provides in its entirety:

> The Commission has adopted the policy that in any civil lawsuit brought by it or in
> any administrative proceeding of an accusatory nature pending before it, it is
> important to avoid creating, or permitting to be created, an impression that a decree is
> being entered or a sanction imposed, when the conduct alleged did not, in fact, occur.
> Accordingly, it hereby announces its policy not to permit a defendant or respondent
> to consent to a judgment or order that imposes a sanction while denying the
> allegations in the complaint or order for proceedings. In this regard, the Commission
> believes that a refusal to admit the allegations is equivalent to a denial, unless the
> defendant or respondent states that he neither admits nor denies the allegations.

17 C.F.R. § 202.5(e).[1]

Nothing in this rule provides authority for the SEC either to silence defendants' future speech or

to reopen the case against them if they speak in a manner that the SEC construes as inconsistent

with the regulatory body's view of the case.

---

[1] The New Civil Liberties Alliance (NCLA), counsel for Barry Romeril, has also filed a petition with the
SEC challenging the legality of the Gag Rule because it was enacted without notice and comment in
violation of the Administrative Procedure Act (APA), in addition to having the constitutional infirmities set
forth in this motion.  New Civil Liberties Alliance, *Petition to Amend* (Oct. 30, 2018), *available at*
http://bit.ly/2XfFD3Z

Judge Jed Rakoff, in *S.E.C. v. Vitesse Semiconductor Corp.*, 771. F. Supp. 2d 304, 308–9 (S.D.N.Y. 2011) took a hard look at these internally contradictory provisions of the SEC's "standard" consent judgments and concluded:

> The result is a stew of confusion and hypocrisy unworthy of such a proud agency as the S.E.C. The defendant is free to proclaim that he has never remotely admitted the terrible wrongs alleged by the S.E.C.; but, by gosh, he had better be careful not to deny them either … here an agency of the United States is saying, in effect, "Although we claim that these defendants have done terrible things, they refuse to admit it and we do not propose to prove it, but will simply resort to gagging their right to deny it." The disservice to the public inherent in such a practice is palpable.

771 F. Supp. 2d at 309.

In short, to secure a consent agreement, the SEC simultaneously assures defendants that they are not admitting or denying guilt, yet promises to punish any who might later create the impression of denying any part of the complaint against them with a reopened civil enforcement proceeding. To put it another way, what SEC giveth with one hand, it taketh away with a gloved fist.

But the rule itself provides no authority whatsoever either for the SEC to arrogate power to command silence or to enforce it by threatening to reopen a proceeding.   Further because "an agency literally has no power to act … unless and until Congress confers power upon it," *La. Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 374 (1986), the SEC lacks such authority.  Thus, this rule, enacted without notice or comment, not only violates the APA—it does not provide the necessary Congressional authority for such extraordinary gag powers.  Finally, as set forth below, because Congress itself could not lawfully enact a gag law prohibiting Americans from talking about their prosecutions, it goes without saying that a mere administrative agency lacks such power.

4

### III.   THE GAG ORDER VIOLATES THE FIRST AMENDMENT

#### A.   The Gag Order Is a Forbidden Prior Restraint

##### 1.   Prior Restraints Are Forbidden

Prior restraints on speech and publication "are the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). "A prior restraint … has an immediate and irreversible sanction," "[while] a threat of criminal or civil sanctions after publication 'chills' speech, prior restraint 'freezes it,'" and it is therefore presumptively impermissible. *Id*. at 559. An injunction against future expression issued because of prior acts is incompatible with the First Amendment. *Gayety Theatres, Inc. v. City of Miami*, 719 F.2d 1550, 1551-52 (11th Cir. 1983).

##### 2.   The Gag Order Is a Prior Restraint

The Consent states that Defendant "agrees not to take any action or to make or cause to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis." The Consent further provides that if Defendant breaches that agreement to restrain his future speech, "the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket." Consent ¶ 11, Ex. A. This Consent permanently forbids Mr. Romeril from contesting allegations in the Commission's complaint, regardless of their accuracy or the truth of the forbidden speech, on pains of reopened and renewed prosecution.

That the defendant or respondent "consented" to the ban on his future speech by entering into a consent decree does not make the practice lawful.  In *Crosby v. Bradstreet Co.*, 312 F.2d 483, 485 (2d Cir. 1963), the court voided a consent order which bound a defendant from publishing matter about the plaintiff in the future. The Second Circuit held that such a prior

restraint, which prohibits a defendant by court order from publishing material in the future, even

when entered on consent, is void:

> Such an injunction, enforceable through the contempt power, constitutes a prior
> restraint by the United States against the publication of facts which the community has
> a right to know and which Dun & Bradstreet had and has the right to publish.  The
> court was without power to make such an order; that the parties may have agreed to it
> is immaterial.

*Id.* at 485.

This constitutional infirmity with gag orders was recognized by Judge Rakoff in

reviewing an SEC Consent Order, who noted: "On its face, the SEC's no-denial policy raises a

potential First Amendment problem." *U.S. S.E.C. v. Citigroup Glob. Markets Inc.*, 827 F. Supp.

2d 328, 333 n. 5 (S.D.N.Y. 2011), *vacated and remanded on other grounds*, 752 F.3d 285 (2d

Cir. 2014). Judge Rakoff noted that law in the Second Circuit provides for reversing a consent

settlement between two parties because the "injunction, enforceable through the contempt power,

constitute[d] a prior restraint by the United States against the publication of facts which the

community has a right to know." *Id.* (quoting *Crosby*, 312 F.2d at 485).

The Consent Agreement also attempts to put Mr. Romeril in the position of "authorizing"

future judicial proceedings against him if he speaks, a situation analogous to that in *Near v. State*

*of Minnesota ex rel. Olson*, 283 U.S. 697, 716 (1931). In *Near*, because of past conduct, a

publisher was subjected to active state intervention that controlled his future speech.  The

Supreme Court has found that such state intervention is a prior restraint, because it embodies

"the essence of censorship." *Alexander v. United States*, 509 U.S. 544, 570 (1993) (quoting

*Near*, 283 U.S. at 713). The First Circuit similarly invalidated a judicially imposed order

prohibiting future speech, even when past conduct suggested that future defamatory conduct was

likely to continue.  *Sindi v. El-Moslimany*, 896 F.3d 1, 21-22 (1st Cir. 2018). Simply put, the

Constitution forbids the kind of censorship the Gag Rule enforces.  An injunction against Mr.

Romeril's future expression based on prior acts is incompatible with the First Amendment. *Universal Amusement Co. v. Vance*, 559 F.2d 1286 (5th Cir. 1977), *on reh'g*, 587 F.2d 159 (5th Cir. 1978) (en banc), *aff'd,* 445 U.S. 308 (1980).

### 3.   The Gag Order Gives SEC Unbridled Enforcement Discretion

There are "two evils" that will not be tolerated in governmental prior restraints.  *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990), *overruled on other grounds by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004).  First, no system of prior restraint may place "'unbridled discretion in the hands of a government official or agency.'"  *Id.* (quoting *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 757 (1988).   "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics … or other matters of opinion."  *West Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).

Mr. Romeril's order forces him to agree "not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis"—a formulation that leaves a party speechless under threat of further prosecution and a reader unable to define any discernible limits on what is prohibited.  Such a broad, all-encompassing and impressionistic prohibition fails to provide clear notice of what speech is forbidden or to articulate any limits on the reach of the speech ban.   Such a prohibition confers impermissible discretion on the SEC to reopen cases if it does not like the "impressions" created by a settling defendant's statements.

### 4.   The Gag Order Silences Plaintiff in Perpetuity

The second evil arises when "a prior restraint … fails to place limits on the time within which the decisionmaker must issue the license" which is "impermissible."  *FW/PBS, Inc.*, 493

U.S. at 226 (citing *Freedman v. Maryland*, 380 U.S. 51, 59 (1965); *Vance v. Universal Amusement Co.*, 445 U.S. 308, 316 (1980).  The Gag Order never expires.  The ban is longer even than a criminal sentence would be for the charged violation, something especially relevant here as Mr. Romeril was never criminally charged.  Mr. Romeril's Consent Order required him to restrict his speech forever and without end—a restriction that cannot be justified under any level of constitutional precedent.  *See id*, at 226-27.  Such perpetually mandated silence is unconstitutional.

"The presumption against prior restraints is heavier—and the degree of protection broader—than that against limits on expression imposed by criminal penalties. Behind the distinction is a theory deeply etched in our law: a free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand." *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559 (1975). Prior restraints are particularly impermissible because "[e]ven if they are ultimately lifted, they cause irremediable loss, a loss in the immediacy, the impact of speech." *Bernard v. Gulf Oil Co.*, 619 F.2d 459, 467–69 (5th Cir. 1980), *aff'd*, 452 U.S. 89 (1981) (quoting Alexander Bickel, *The Morality of Consent* 61 (1975)).

**B.   The Gag Order Is a Content-Based Restriction on Speech**

**1.   The Gag Order Mandates the Content of Speech**

The consequences of a reopened action when Defendant questions the agency's action against him constitute content-based restrictions on speech which "are presumptively invalid." *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 381 (1992)*.*  Even if considered merely a post-publication restraint, the Gag Order is an unconstitutional content-based restriction.  The Gag Order regulates the content of speech by mandating that Defendant completely agree with the

SEC's view of the same complaint that led to the Consent Order, further threatening penalties if a defendant creates even an impression of a forbidden view of the complaint.  Such restrictions are "presumptively invalid" and subject to the highest level of judicial scrutiny.  *Id.*, at 382.  Elevated "judicial scrutiny is warranted" anytime a "content-based burden" is placed "on protected expression."  *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564 (2011).  As an example, under the "Son of Sam" laws—which seek to prohibit criminals from profiting from accounts of their crimes—courts have held that the content of the publication may not be restrained.  *See Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.*, 502 U.S. 105, 118 (1991) ("The Son of Sam law establishes a financial disincentive to create or publish works with a particular content.  To justify such differential treatment, 'the State must show that its regulation is necessary to serve a compelling state interest and is narrowly drawn to achieve that end.'") (quoting *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 231 (1987)).

If murderers are free to publish books about their crimes and their prosecutions—as they must be in a free society—*a fortiori*, the SEC ought not to be able to silence SEC targets from speaking about their enforcement proceedings.

### 2.  The Speech Ban Serves No Compelling Government Interest

To pass constitutional muster, speech bans must be narrowly tailored and serve a compelling government interest by the least restrictive means.  *United States v. Playboy* Entm't *Grp., Inc.*, 529 U.S. 803, 813 (2000); *Burk v. Augusta-Richmond County*, 365 F.3d 1247, 1255 (11th Cir. 2004).

The Gag Rule was enacted in 1972 "to avoid the perception that the SEC had entered into a settlement when there was not in fact a violation" of the securities laws.  *See* 17 C.F.R. § 202.5(e).  The 2008 financial crisis "gave way to a new concern that the public might believe

that the agency was acting collusively with wrongdoers and allowing them to escape serious

punishment."  David Rosenfeld, *Admissions in SEC Enforcement Cases: The Revolution That*

*Wasn't*, 103 Iowa L. Rev. 113, 120 (2017).  Judge Rakoff memorably articulated this latter

concern about SEC collusion in *S.E.C. v. Bank of Am. Corp.*, 653 F. Supp. 2d 507, 508-12

(S.D.N.Y. 2009):

> The proposed Consent Judgment in this case suggests a rather cynical relationship
> between the parties: the S.E.C. gets to claim that it is exposing wrongdoing on the part of
> the Bank of America in a high-profile merger; the Bank's management gets to claim that
> they have been coerced into an onerous settlement by overzealous regulators.  And all
> this is done at the expense, not only of the shareholders, but also of the truth. [2]

Neither policy justification for the enactment or enforcement of the rule is a legitimate

basis for extracting silence from SEC targets, let alone a compelling one.  Whether the SEC is

being overaggressive in its charges or is underenforcing the laws while colluding with its targets

at taxpayer expense, purchasing settlements at the price of eternal silence from defendants ill-

serves public understanding of the agency and its workings.

It is hard to imagine a policy better designed to suppress truth about these important

matters than the Gag Rule as enforced by the SEC in its sweeping gag orders.   Securities law

professor John Coffee describes these consent settlements as an "artifact": "The SEC is premised

on the idea that sunlight is the best disinfectant, and a nontransparent settlement harms the SEC's

reputation."  Z. Goldfarb, "*SEC May Require More Details of Wrongdoing to Be Disclosed in*

*Settlements*," WASH. POST, Apr. 1, 2010.

---

[2] Judge Jed Rakoff's influential critiques of the Rule have consistently echoed both concerns.  His refusal to approve
a consent judgment in one case in part because it contained no admissions of wrongdoing and therefore did not get to
the "truth," expressed concerns about the public perception of letting defendants off lightly, or even SEC collusion.
*S.E.C. v. Bank of Am. Corp.*, 653 F. Supp. 2d 507, 512 (S.D.N.Y. 2009).  At the same time, Judge Rakoff has
acknowledged that the SEC was also likely bringing actions that lacked merit: "Another possibility … is that no fraud
was committed.  This possibility should not be discounted." Hon. Jed S. Rakoff, "Why Have No High-Level
Executives Been Prosecuted in Connection with the Financial Crisis?" Speech, in CORPORATE CRIME REPORTER,
(Nov. 12, 2013).

If the SEC in 1972 was extracting settlements when there had been no violation of the securities laws, *it is important for the American public to know that*.  By the same token, if the post-2008 SEC was letting powerful defendants off lightly, or even entering into collusive deals, *it is equally important to shed light on those practices.*  The government is institutionally highly unlikely to admit to either practice.  Silencing the only other parties to the arrangements with a government-enforced muzzle allows the government to act with impunity.

The government has no compelling interest in suppressing speech or suppressing complaints about government regulation and enforcement.  The fact that the SEC *systematically* demands gag orders as a condition of its settlements is profoundly dangerous.  *See generally* James Valvo, *The CFTC and SEC Are Demanding Unconstitutional Speech Bans in Their Settlement Agreements*, NOTICE & COMMENT, A Blog from Yale J. Reg. and ABA Sec. of Admin. Law & Regulatory Practice, Dec. 4, 2017 (http://bit.ly/2UJ410S).  Such a practice prevents the public, Congress, courts, and policymakers from learning the specifics of how the SEC conducts its enforcement actions.  Shielding such an important exercise of government power from oversight and scrutiny prevents lawmakers from knowing when to rein in or unleash SEC authority and engage in course correction.

Furthermore, the interests protected by the First Amendment are not only the right of the speaker to free expression, but also the right of those *hearing* him to receive information unfettered by any government constraints.  As one court stated, "these settlements do not always take adequate account of another interest ordinarily at stake as well: that of the public and its interest in knowing the truth in matters of major public concern."  *S.E.C. v. CR Intrinsic* Inv'rs*, LLC*, 939 F. Supp. 2d 431, 443 (S.D.N.Y. 2013), *abrogated by U.S.S.E.C. v. Citigroup Glob. Markets, Inc.*, 752 F.3d 285 (2d Cir. 2014).  In a 2017 article, Judge Rakoff repeated these

concerns noting that a complaint "which largely consists of unproven allegations" filed by the

SEC suggests that when "very serious misconduct is being alleged … [t]he public … has an

obvious interest in knowing whether such serious allegations made by a government agency are

true or untrue."  Hon. Jed S. Rakoff, *AGAINST: Neither admit nor deny*, Compliance Week,

Sept. 6, 2017.  The article notes the self-serving expedience created by the Gag Rule, which

> in addition to impeding transparency and accountability—also means that wrongly
> accused parties are incentivized not to prove their innocence if they can get a cheap
> settlement without admitting anything.  By the same token, the SEC can avoid having to
> litigate questionable cases by the simple expedient of offering a cheap settlement.  And to
> make matters worse, the SEC hides the flimsiness of such cases from the public by
> imposing a "gag" order that prohibits the settling defendants from contesting the SEC's
> allegations in the media.

*Id.*

    By systematically silencing all defendants, such gag provisions insulate the SEC from

criticism by the very people best placed and motivated to expose wrongdoing, over-aggressive

prosecutions and/or flawed enforcement policies or practices.  Such a restriction "operates to

insulate … [government laws] from constitutional scrutiny and … other legal challenges, a

condition implicating central First Amendment concerns."  *Legal Servs. Corp. v. Velazquez*, 531

U.S. 533, 547 (2001).

### 3.   The Gag Order Does Not Operate by the Least Restrictive Means

    The Gag Order's sweeping and perpetual speech restriction is far from the least

restrictive means of achieving any compelling interest the government may claim.  If the SEC

believes specific allegations of the complaint or order should be admitted by the defendant, those

specific admissions, with the opportunity provided to defendants to truthfully qualify them, can

always be negotiated as part of the settlement.  If a settling party asserts his innocence

untruthfully, the SEC need only issue a press release to the contrary, a remedy far preferable and

less restrictive than the lifetime ban on the defendant's speech procured under the government's boot and enforced by the threat of renewed prosecution.

### C.  The Gag Order Forbids Truthful Speech

Mr. Romeril's Gag Order is also unconstitutional because it forbids true speech just the same as false speech. His Consent Order ends with a provision that "lifts" the Gag Order—and its substantive commands about admissions and denials—for testimonial obligations or his "rights" to take legal or factual positions in judicial proceedings in which the Commission is not a party. The SEC's "lift" is a tacit admission that the Gag Order *must* contain an exception where it conflicts with a defendant's obligation to speak the truth under oath.  This telling exception is fatal to any defense of the Gag Order by the Commission because it concedes that defendants' obligations to tell the truth under oath may be at odds with the SEC's command that defendants may not deny any allegations in the SEC's settled but unproven complaint. This exception would not be necessary unless SEC knows that the gag policy would otherwise lead to false impressions or even perjury.  SEC's self-favoring exemption from the exception—"in which the Commission is not a party"—also disturbingly places SEC's thumb on the scales of justice in any subsequent proceeding in which the Commission is a party.

Indeed, the Gag Rule's original justification when it was adopted in 1972 was that it was "important to avoid creating … an impression that a decree is being entered or a sanction imposed, when the conduct alleged did not, in fact, occur."  17 C.F.R. § 202.5(e).  Yet the Gag Rule as implemented in consent orders itself creates the false impression that every fact in the complaint or order is accurate, when that is seldom, if ever, the case.  Complaints, as noted by Judge Rakoff, consist "largely … of unproven allegations."  Hon. Jed S. Rakoff, *AGAINST: Neither admit nor deny*, Compliance Week, Sept. 6, 2017.  Thus, the text of the SEC's original justification for the

Gag Rule argues *against* having a rule that gives the false impression that the complaint is completely true.

This "lift" of the ban in testimonial situations appears to be a strategic exception designed to avoid a gag order's coming to the attention of a judge in subsequent judicial proceedings who might well invalidate such a disturbing and unconstitutional speech ban unheard of in normal state or federal judicial settlements or consent decrees.

But this exception is much too parsimonious. The government doesn't get to decide *when* defendants may speak the truth, by carving out a caveat calculated to shield the ban from scrutiny in subsequent judicial or testimonial proceedings, but otherwise silencing defendants for life. The statement of the proposition suffices to expose its raw unconstitutionality.

### D.  The Gag Order Is an Unconstitutional Condition

The SEC cannot condition a person's ability to settle with the government upon the surrender of his First Amendment rights.  *Legal Services v. Velazquez*, 531 U.S. 533 (2001); *Accord*, *Koontz v. St. Johns River Water Management Dist*., 570 U.S. 595 (2013) ("the government may not deny a benefit to a person because he exercises a constitutional right.") These "cases reflect an overarching principle, known as the unconstitutional conditions doctrine, that vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." Moreover,

> regardless of whether the government ultimately succeeds in pressuring someone into forfeiting a constitutional right, the unconstitutional conditions doctrine forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them.

*Koontz*, 570 U.S. at 606.

Nor does it make a difference that the government could have refused to settle at all. Virtually all unconstitutional conditions cases involve an optional governmental action of some

kind.  As *Koontz* holds, "we have repeatedly rejected the argument that if the government need

not confer a benefit at all, it can withhold the benefit because someone refuses to give up

constitutional rights." *Koontz*, at 607.   *See, e.g., United States v. American Library Assn.,*

*Inc.,* 539 U.S. 194, 210 (2003) ("[T]he government may not deny a benefit to a person on a basis

that infringes his constitutionally protected ... freedom of speech *even if he has no entitlement to*

*that benefit*." (emphasis added and internal quotation marks omitted)); *Wieman v. Updegraff*, 344

U.S. 183, 191 (1952) (explaining that to focus on "the facile generalization that there is no

constitutionally protected right to public employment is to obscure the issue.")  Even if SEC

would have been entirely within its rights in refusing to settle, that greater authority does not

imply a "lesser" power to condition the settlement upon defendant's forfeiture of his

constitutional rights. *See Nollan v. California Coastal Commission*, 483 U.S. 825, 836-837

(1987).  Just as Congress cannot condition its funding "lest the First Amendment be reduced to a

simple semantic exercise," *Velazquez* at 547, similarly here, the SEC cannot condition the benefit

of a conclusively settled case on eternal silence by those it prosecutes about the merits of the

case.

### IV. THE GAG ORDER VIOLATES DUE PROCESS BECAUSE IT IS UNCONSTITUTIONALLY VAGUE

The Gag Order is also unconstitutionally vague. A settling defendant had better stay mum

altogether, rather than navigate at his peril what he can say about his own prosecution under the

terms of the Gag Order.  The Supreme Court has recognized that a penal law:

> must be sufficiently explicit to inform those who are subject to it what conduct
> … will render them liable to its penalties … a statute which either forbids
> or requires the doing of an act in terms so vague that men of common intelligence
> must necessarily guess at [the law's] meaning and differ as to its application,
> violates the first essential of due process of law.

*Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926).

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (citing *Connally*, 269 U.S. at 391). "When speech is involved," it is particularly important "to ensure that ambiguity does not chill protected speech." *Id.* at 253-54. The Gag Order has no limiting principle. The order forbids a defendant from even creating "an *impression* that a decree is being entered or a sanction imposed, when the conduct alleged did not, in fact, occur." 17 C.F.R. § 202.5(e). This phrasing confers unlimited discretion on the Commission to decide what future speech is or is not permissible and is therefore unconstitutionally vague.

## V.  THE GAG ORDER VIOLATES MOVANT'S FIRST AMENDMENT RIGHT TO PETITION

The First Amendment provides that "Congress shall make no law … abridging … the right of the people … to petition the Government for a redress of grievances."  U.S. Const. amend. I.  Its protections include the right of petition by defendants "with respect to the passage and enforcement of laws." *E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138 (1961).  The First Amendment "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *N. Y. Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964) (quoting *Roth v. United States*, 354 U.S. 476 (1957)).  The Gag Rule as implemented by the SEC in its orders offends our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quotation marks omitted).  Speech on matters of public concern is at "the heart of … First Amendment[] protection," and "occupies the highest rung of the hierarchy of First Amendment values." *Snyder*, at 451-52, quoting *Connick v. Myers*,

461 U.S. 138, 145 (1983); *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758-59 (1985).   Speech concerning political change "trenches upon an area in which the importance of First Amendment protections *is at its zenith.*" *Meyer v. Grant*, 486 U.S. 414, 425 (1988) (emphasis added and internal quotation marks omitted).   "[S]peech critical of the exercise of the State's power lies at the very center of the First Amendment."  *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1034 (1991).

Mr. Romeril's Gag Order prohibits him from ever questioning the merits of his prosecution. But history is replete with compelling accounts of prosecutorial abuse of power, including prosecutors who deny their targets access to exculpatory evidence, who engage in misconduct, sharp practice or intimidation tactics that can and have brought defendants or respondents to their knees. Other prosecutions, brought in good faith, have later been shown to have been based upon perjured or compromised evidence.  Further, the prospect of potentially ruinous costs, crippling time demands, and collateral damage mean that even innocent people may find settling with the government preferable to hazarding a full-fledged prosecution.

Regulation by enforcement and settlement has drawn the concern and attention of judges and even SEC Commissioners.  In a May, 2018 speech, SEC Commissioner Hester Peirce noted:

> The practice of attempting to stretch the law is a particular concern when it occurs in settled enforcement actions. Often, given the time and costs of enforcement investigations, it is easier for a private party just to settle than to litigate a matter. The private party likely is motivated by its own circumstances, rather than concern about whether the SEC is creating new legal precedent. However, the decision made by that party about whether to accede to an SEC's (sic) proposed order can have far-reaching effects. Settlements — whether appropriately or not — become precedent for future enforcement actions and are cited within and outside the Commission as a purported basis for the state of the law. Quite simply, a settlement negotiated by someone desperate to end an investigation that is disrupting or destroying her life should not form the basis on which the law applicable to others is based.
> The third issue I am watching is the length of SEC investigations. It is harder for people to defend themselves against older charges, and the psychological toll of prolonged investigations can be heavy.

Hester M. Peirce, *The Why Behind the No*: *Remarks at the 50th Annual Rocky Mountain Securities Conference*, May 11, 2018.

Judge Rakoff's comments quoted in full above at p. 11 also acknowledge that

> wrongly accused parties are incentivized not to prove their innocence … the SEC can avoid having to litigate questionable cases by the simple expedient of offering a cheap settlement.  And to make matters worse, the SEC hides the flimsiness of such cases from the public by imposing a "gag" order that prohibits the settling defendants from contesting the SEC's allegations in the media.

Hon. Jed S. Rakoff, *AGAINST: Neither admit nor deny*, Compliance Week, Sept. 6, 2017.

Consent agreements may well represent either the SEC's failure to make a case when put to its burden of proof or a settling target's guilt—or some combination thereof.  Any person who waves the white flag to end the process should not be forever silenced on the topic of the merits of his prosecution—most especially, not by the prosecutor.

Speech focused on public concern is "more than self-expression; it is the essence of self-government." *Id.* at 451-52.  Thus, this speech is indispensable to the First Amendment's values and deserves "special protection." *Id.*  When prosecutors abuse their considerable powers beyond lawful and ethical bounds, or a prosecution is based on weak or compromised evidence, their targets, including Mr. Romeril, should be free to say so and petition appropriate government bodies for change.  When agencies regulate through enforcement, guidance, or other legislatively unauthorized means, the persons affected should never be silenced by the regulator.   A healthy democratic republic should encourage such self-examination.  A constitutional democratic republic requires it.

Gag Orders such as Mr. Romeril's stifle informed public debate on these matters.  They require defendants to make a difficult choice: surrender their constitutional rights to speak freely and to petition the government or forgo consent settlements with the Commission and face the potentially ruinous costs and risks of contesting the proceedings to the bitter end. Under the

orders insisted upon by the SEC, the only way for a defendant to settle an enforcement proceeding is to surrender forever his future First Amendment rights of speech and petition with respect to the government's prosecution.  Our Constitution does not permit that baleful bargain.

## VI. THE GAG ORDER IMPLICATES THE JUDICIARY IN VIOLATING THE CONSTITUTION

Agencies that settle charges with their targets are not just acting under their own power. They have harnessed the machinery of the state, whether a court or an administrative tribunal, and they thereby imperil the livelihood, resources, and liberty of defendants.  Consent decrees impose injunctive prohibitions and fines enforceable by judicial contempt power.  Such applications of judicial power by administrative agencies are "inherently dangerous" as noted by Judge Rakoff and implicate a coordinate branch in the constitutional breach:

> The injunctive power of the judiciary is not a free-roving remedy to be invoked at the whim of a regulatory agency, even with the consent of the regulated.  If its deployment does not rest on facts—cold, hard, solid facts, established either by admissions or by trials—it serves no lawful or moral purpose and is simply an engine of oppression . . . .
>
> [T]here is an overriding public interest in knowing the truth.  In much of the world, propaganda reigns, and truth is confined to secretive, fearful whispers.  Even in our nation, apologists for suppressing or obscuring the truth may always be found.  But the S.E.C., of all agencies, has a duty, inherent in its statutory mission, to see that the truth emerges; and if it fails to do so, this Court must not, in the name of deference or convenience, grant judicial enforcement to the agency's contrivances.

*U.S. S.E.C.,* 827 F. Supp. 2d at 335 (footnotes omitted).

As the Second Circuit has noted, prior restraints are "particularly abhorrent to the First Amendment in part because they vest in government agencies the power to determine important constitutional questions properly vested in the judiciary." *N.Y. Magazine v. Metro. Transp. Auth.*, 136 F.3d 123, 131 (2d Cir. 1998) (citing Laurence H. Tribe, *American Constitutional Law,* § 12-38, at 1056-57 (2d ed. 1988).

19

All judges have a duty to follow the law of the land, and they should not be the enforcers of that which they know to be against the law, even though the parties themselves may have agreed to the conditions.

## CONCLUSION

SEC's contrivance of a power to fashion a Gag Order out of rule 202.5(e)'s "policy" works to suppress truth, oppress defendants, and insulate the agency from public understanding and criticism.  The value of the free flow of information far outweighs such illegitimate "policies" as bureaucratic discomfort with the appearance of over-reaching or underenforcement, which serves solely the Commission's inherent aversion to criticism.  Agencies do not have some special grant of power to shield themselves from public scrutiny, a power Congress, actual courts, prosecutors, and lawmakers all lack under well-established law.

The Gag Rule violates an impressive array of constitutional doctrines, including infringement of First Amendment rights to freedom of speech and the press, unconstitutional conditions, the right to petition, prior restraint, void-for-vagueness, and violation of due process. Any rule that racks up a list of constitutional and legal violations that lengthy compels the conclusion that some fundamental tenet of our constitutional republic has been violated.

Because "[f]ragile First Amendment rights are often lost or prejudiced by delay," *Gulf Oil*, 619 F.2d at 470, defendant respectfully requests that this Court set aside and vacate paragraph 11 of this Consent Order.  Defendant submits the Amended Consent of Barry D. Romeril ("Exhibit A") which removes the Gag Order (¶ 11) and requests that the court vacate the Judgment of June 16, 2003, and reenter Final Judgment with the Amended Consent Order (Exhibit A) substituted in place of the unconstitutional and void Consent.

Respectfully submitted,

/s/ Margaret A. Little_____
Margaret A. Little (*pro hac vice*), CT Bar No. 303494
Caleb Kruckenberg, *admitted in New York*
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC 20036

Telephone: 202-869-5210
Email: peggy.little@ncla.legal
Email: caleb.kruckenberg@ncla.legal
*Attorneys for Defendant Barry D. Romeril*

## CERTIFICATE OF SERVICE

I certify that on this 6th day of May, 2019, I have served a copy of the above and foregoing on all counsel of record through the Court's CM/ECF system.

/s/ Margaret A. Little_____
Margaret A. Little (*pro hac vice*), CT Bar No. 303494